IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Karen Fuller Kennon, )<br>)<br>      Plaintiff, )<br>)<br>vs. )<br>)<br>Andrew M. Saul, )<br>Commissioner of Social Security, )<br>)<br>      Defendant. )<br>_____ ) | C.A. No. 6:20-cv-1679-TMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

    This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.), concerning the disposition of Social Security cases in this District, and 28 U.S.C. § 636(b)(1)(B).[1] The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

    The plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on September 20, 2016, alleging that she became unable to work on July 2, 2015.[2] The applications were denied initially and on reconsideration by the Social Security Administration. On August 24, 2017, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff,

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[2] In a decision dated July 1, 2015, another administrative law judge denied the plaintiff's prior applications for DIB and SSI benefits (Tr. 58-69).

represented by an attorney, and Karl Weldon, an impartial vocational expert, appeared on February 5, 2019, considered the case *de novo*, and on April 2, 2019, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended.  The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on March 8, 2020.  The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)  The claimant meets the insured status requirements of the Social Security Act through September 30, 2019.
>
> (2)  The claimant has not engaged in substantial gainful activity since July 2, 2015, the alleged onset date (20 C.F.R. § 404.1571 *et seq,* 416.971 *et seq.*).
>
> (3) The claimant had the following severe impairments: degenerative joint disease of the knees, dysfunction of the left shoulder, and obesity (20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> (4)  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).
>
> (5)  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§  404.1567(b) and 416.967(b). I specifically find that the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit and stand and/or walk, with normal breaks for 6 hours each in an 8-hour workday. The claimant can frequently operate left foot controls. She can occasionally climb ladders, ropes, or scaffolds. She can frequently climb ramps or stairs. She can occasionally balance, stoop, crouch, kneel, or crawl. She is limited to frequent overhead reaching with the left upper extremity. She is limited to frequent use of moving machinery and exposure to unprotected heights.
>
> (6)  The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565, 416.965).

(7)  The claimant was born on December 4, 1965, and was 49 years old, which is defined as a younger individual age 18-49 on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 C.F.R. §§ 404.1563, 416.963).

(8)  The claimant has a limited education and is able to communicate in English (20 C.F.R. §§ 404.1564, 416.964).

(9)  Transferability of job skills is not material to the determination of disability because the claimant's past relevant work is unskilled (20 C.F.R. §§ 404.1568, 416.968).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from July 2, 2015, through the date of this decision (20 C.F.R. §§ 404.1520(g), 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(A), (H)(I), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged

in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that meets or medically equals an impairment contained in the Listing of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1, (4) has an impairment that prevents past relevant work, and (5) can perform other work. *Id.* §§ 404.1520, 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

A claimant must make a *prima facie* case of disability by showing he is unable to return to his past relevant work because of his impairments. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). Once an individual has established a *prima facie* case of disability, the burden shifts to the Commissioner to establish that the plaintiff can perform alternative work and that such work exists in the national economy. *Id.* (citing 42 U.S.C. § 423(d)(2)(A)). The Commissioner may carry this burden by obtaining testimony from a vocational expert. *Id.* at 192.

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id*. Consequently, even if the court disagrees with Commissioner's decision, the court must uphold it if it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## ANALYSIS

The plaintiff was 49 years old on her alleged disability onset date (July 2, 2015) and 53 years old on the date of the ALJ's decision (April 2, 2019) (Tr. 19). She has

a sixth grade education and past relevant work experience as a custodian (Tr. 19, 36). As noted, the ALJ found that the plaintiff had the residual functional capacity ("RFC") to perform light work with additional postural, manipulative, and environmental limitations (Tr.15). The plaintiff argues that the ALJ erred by failing to properly evaluate the opinion of treating physician Anthony Sanchez, M.D., of Orthopaedic Specialties of Spartanburg (doc. 12 at 17-23).

The regulations require that all medical opinions in a case be considered. 20 C.F.R. §§ 404.1527(b), 416.927(b). The regulations further direct ALJs to accord controlling weight to a treating physician's opinion that is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and that is not inconsistent with the other substantial evidence of record. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). If a treating physician's opinion is not given controlling weight, the ALJ must proceed to weigh the treating physician's opinion, along with all the other medical opinions of record, based upon the following non-exclusive list of factors: (1) the examining relationship; (2) the length of the treatment relationship and the frequency of the examinations; (3) the nature and extent of the treatment relationship; (4) the evidence with which the physician supports his opinion; (5) the consistency of the opinion; and (6) whether the physician is a specialist in the area in which he is rendering an opinion. *Id.* §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5).[3] *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, "[w]hile an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of

---

[3] These regulations apply for applications, like the plaintiff's, filed before March 27, 2017. *See* 20 C.F.R. §§ 404.1527, 416.927. For applications filed on or after March 27, 2017, a new regulatory framework for considering and articulating the value of medical opinions has been established. *See id.* §§ 404.1520c, 416.920c. *See also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective Mar. 27, 2017).

the factors before deciding how much weight to give the opinion." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 385 (4th Cir. 2021).

Recently, the Fourth Circuit reiterated the treating physician rule, explaining that it "requires that ALJs give 'controlling weight' to a treating physician's opinion on the nature and severity of the [plaintiff's] impairment if that opinion is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with the other substantial evidence' in the record." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 106 (4th Cir. 2020). The court went on to note that a treating physician opinion "*must* be given controlling weight *unless* it is based on medically unacceptable clinical or laboratory diagnostic techniques or is *contradicted* by the other substantial evidence in the record." *Id*. at 107 (emphasis in original) (citations omitted).

On May 1, 2018, Dr. Sanchez provided a statement, noting that he began treating the plaintiff on January 4, 2010, and that he last treated her on June 6, 2017. He stated that he treated the plaintiff for arthritis of the knees and that from 2010 to 2014 her arthritis progressively worsened. Dr. Sanchez further noted that the plaintiff had tricompartmental arthritis, as shown by her last x-ray on October 15, 2014, and the lateral compartment was worst on the right knee. Dr. Sanchez stated that new films were not usually completed unless there was a change in the treatment plan and that the plaintiff received relief from Supartz injections, so her functional ability went up and down. Dr. Sanchez stated that the plaintiff started Supartz injections in 2014 and that she had several rounds of the injections, but the more she used her knees, the faster her relief wore off, and therefore it was best for her to stay off of her knees. Dr. Sanchez opined that since January 2014 the plaintiff had been limited to no more than sedentary work and that lifting anything heavy would only make her worse. Dr. Sanchez further noted that the plaintiff also had back problems that would affect her ability to lift. He opined the plaintiff should not lift more than twenty pounds at a time and no amount of weight frequently (Tr. 936).

The ALJ found that "regarding the [plaintiff's] alleged knee pain," he had "limited her to light work with standing and/or walking no more than 6 hours in an 8-hour workday" (Tr. 17). In addition, the RFC assessment limited the plaintiff to frequently operating left foot controls; occasionally climbing ladders, ropes, or scaffolds; frequently climbing ramps or stairs; occasionally balancing, stooping, crouching, kneeling, or crawling; frequent overhead reaching with the left upper extremity; and frequent use of moving machinery and exposure to unprotected heights (Tr. 15). The ALJ noted that, in making the RFC assessment, he gave Dr. Sanchez's opinion "limited weight" (Tr. 17), stating, "Although Dr. Sanchez is a treating specialist with a longitudinal history with the claimant, his opinion is not supported by his orthopedic treatment record, including objective examination findings. Furthermore, the sedentary limitations are inconsistent with the weight of the objective medical record" (Tr. 18).

Following this finding, the ALJ discussed the plaintiff's orthopedic and physical therapy records for treatment of her bilateral knee pain (Tr. 18-19). Specifically, the ALJ acknowledged bilateral knee x-rays that showed medial narrowing with osteophyte formation on the right and mild narrowing with preserved cartilage space on the left (Tr. 18) (citing Tr. 571).The ALJ noted, however, that Dr. Sanchez's treatment records consistently showed that, despite her arthritis, the plaintiff did not have swelling in her knees; she had good strength with no instability or ligamentous laxity; and her range of motion was from full extension to 105 to 120 degrees of flexion bilaterally (Tr. 18-19; *see* Tr. 404, 571, 582, 584, 587, 590, 593, 883, 889, 891, 911-12, 942-53, 1222). Further, Dr. Sanchez's treatment notes also consistently showed that straight leg raise and stinchfield (straight leg raise with resistance) tests were negative (Tr. 18-19; *see* Tr. 571, 582, 584, 587, 590, 593, 889, 891). The ALJ explained that physical therapy records also conflicted with Dr. Sanchez's opinion, as the physical therapy records showed that the plaintiff's symptoms improved with treatment (Tr. 17-19). For example, in March 2016, the plaintiff reported "feeling pretty

good," and she was "planning on starting a walking program now that the weather [was] warm" (Tr. 18; *see* Tr. 643). In June 2016, the plaintiff's physical therapist noted that she continued to progress with no adverse effects and she was "able to return to [] her previous level of functional activity" (Tr. 654). In October 2017, the plaintiff reiterated that she "felt better" with physical therapy and that her "pain is better" after performing exercises and stretching (Tr. 18; *see* Tr. 571, 1187). Further, the ALJ considered that the plaintiff's knees felt "sore" after "doing a lot of errands," "being really busy planning her wedding," or spending the day working in church (Tr. 18; *see* Tr. 648, 650, 1141). Further, the ALJ noted that while the plaintiff's first round of Supartz injections helped her knee pain for up to eight months, she later reported more limited relief (Tr. 18-19). The ALJ noted that treatment records from Dr. Sanchez did not show any worsening of her condition, and the plaintiff continued to report improvement with physical therapy and that she got relief from her pain medication (Tr. 17-19; *see* Tr. 404, 571, 582, 584, 587, 590, 593, 643, 654, 883, 889, 891, 911-12, 942-53, 1187, 1222). Also, the ALJ observed that surgery was an option noted by treating providers in 2016 and 2018, but the plaintiff elected to proceed with more physical therapy and continued to request injections rather than exploring surgical intervention (Tr. 18-19).

The ALJ summarized his findings as follows: "In sum, the record documents objective examination findings and improvement with physical therapy, which ultimately support the RFC rather than the excessive restrictions noted in the prior ALJ's decision and the opinion of the treating physician Dr. Sanchez" (Tr. 19). In making the RFC finding, the ALJ also gave "some weight" to the state agency consultants' opinions, which the ALJ found "were consistent with the weight of the objective medical evidence . . . , including orthopaedic examinations and physical therapy records" (Tr. 19). Specifically, Seham El-Ibiary, M.D., and Jean Smolka, M.D., opined that the plaintiff could perform a range of light work, including standing and walking for six hours in an eight-hour workday, with

8

additional postural and environmental limitations (Tr. 19; *see* Tr. 97-99, 111-15).[4]  The ALJ was required to consider the state agency medical consultants' assessments as opinion evidence as they "are highly qualified and experts in Social Security disability evaluation." *See* 20 C.F.R. §§ 404.1513a(b), 416.913a(b).

The plaintiff argues (doc. 12 at 22) that Dr. Sanchez's opinion should have been adopted by the ALJ because it was "not inconsistent with the prior ALJ's findings," which limited the plaintiff to "standing and walking combined . . . for four hours out of an eight-hour workday" (Tr. 62). The plaintiff notes that if the ALJ here had limited her to sedentary work, she would be disabled under the Medical-Vocational Guidelines since she changed age category to "closely approaching advanced age" during the pendency of this case (doc. 12 at 22). The undersigned finds no error. The ALJ acknowledged the prior ALJ's July 2015 decision and noted that the Fourth Circuit Court of Appeals observed in *Albright v. Commissioner of Social Security Administration*, 174 F.3d 473 (4th Cir. 1999), that a prior RFC finding was "highly probative" of the claimant's RFC for the period that began two weeks after the previously adjudicated period because, absent evidence to the contrary, "a claimant's condition very likely remains unchanged within a discrete two-week period" (Tr. 22). Here, however, the ALJ found that while the plaintiff's alleged onset date of disability was only a day after the prior ALJ's decision, the subsequent evidence of orthopedic treatment and physical therapy documented some improvement and warranted a deviation from the prior ALJ's findings. As outlined above, the undersigned agrees that the ALJ adequately explained his findings such that meaningful judicial review is possible, and substantial evidence supports the RFC finding.

---

[4] Dr. Smolka, like the ALJ here, also found that the plaintiff had manipulative limitations in that she was limited to frequent overhead reaching with the left upper extremity (*compare* Tr. 15 *with* Tr. 112-13).

Based upon the foregoing, the undersigned finds no error in the ALJ's consideration of Dr. Sanchez's opinion. The ALJ adequately explained his reasoning in finding that the opinion conflicted with other substantial evidence of record, including the opinions of the state agency medical consultants and contemporaneous treatment notes. To the extent the plaintiff argues that substantial evidence could also support Dr. Sanchez's opinion, the plaintiff appears to invite the court to re-weigh the evidence considered by the ALJ and come to a different conclusion, which is inappropriate on substantial evidence review.

## **CONCLUSION AND RECOMMENDATION**

The Commissioner's decision is based upon substantial evidence and is free of legal error.  Therefore, based upon the foregoing, the Commissioner's decision should be affirmed.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

April 28, 2021
Greenville, South Carolina

***The attention of the parties is directed to the important notice on the following page.***

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).